UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| KRISTINE MARTENSEN LAUREL, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 21-cv-552-RMM |
| v. | ) ) | |
| UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kristine Martensen Laurel challenges the United States Citizenship and Immigration Services ("USCIS"), USCIS Director Kenneth Cuccinelli, and USCIS Vermont Service Center Director Laura Zuchowski's (collectively "USCIS Defendants") March 2, 2020 denial of her nonimmigrant petition to obtain an H1-B visa. *See* Am. Complaint ¶¶ 11–18, ECF No. 4 ("Compl."). Ms. Laurel filed this action in the U.S. District Court for the District of Columbia on March 2, 2021,[1] alleging that USCIS Defendants violated the Administrative Procedure Act ("APA"), the Fifth Amendment of the United States Constitution, and 8 C.F.R. 103.2(b)(16)(i) by denying her application. *Id.* ¶ 37.

Currently pending before the Court is USCIS Defendants' motion to transfer venue to the Eastern District of New York, or alternatively to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3). *See* Defs.' Mot. to Transfer and Dismiss and Mem. in Supp. Thereof ("Defs.' Mot.") at 2–8, ECF No. 6. Ms. Laurel opposes the motion and contends that

---

[1] With the consent of both parties, this matter was referred to the undersigned for all purposes, including trial, by the Honorable Trevor N. McFadden on April 14, 2021. *See* Apr. 14, 2021 Min. Entry.

1

venue is proper and should remain in the District of Columbia. *See* Pl.'s Opp'n to Defs.' Mot. ("Pl.'s Opp'n"), ECF No. 10.

Upon consideration of the parties' submissions[2] and the relevant legal authorities, the Court will **GRANT-IN-PART** Defendants' Motion to Transfer and Dismiss. The Court **GRANTS** Defendants' Motion to Transfer this matter to the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1404(a) and, having transferred the case to another court, declines to reach the merits of Defendants' Motion to Dismiss for improper venue.

## BACKGROUND

Ms. Laurel resides in Brooklyn, New York, and holds an F1 non-immigrant student visa. *See* Compl. at caption & ¶ 1. On April 11, 2019, she received a job offer as a Management Analyst with a private company called Organic Opportunities. *See id.* ¶¶ 1–2. The company subsequently filed a Petition for Nonimmigrant Worker (USCIS Form I-129) and a change of status request on Ms. Laurel's behalf. *See id.* ¶¶ 2–3. In order to receive a temporary work visa ("H1-B"), Ms. Laurel had to show, by a preponderance of the evidence, that her Management Analyst position constituted a specialty occupation under applicable regulations. *See id.* ¶¶ 5–6.

USCIS processed the petition at its Vermont Service Center. *See id.* ¶ 21. On July 2, 2019, USCIS requested additional information to determine whether Ms. Laurel was eligible for an H1-B visa. *See id.* ¶ 9. Ms. Laurel's employer provided this supplemental information on September 30, 2019. *See id.* ¶¶ 9–10. On March 2, 2020, USCIS denied Ms. Laurel's petition, concluding she had not sufficiently demonstrated that her position was eligible for an H1-B visa because she failed to show (1) how the nature of the Management Analyst position was "so

---

[2] *See* Compl., ECF No. 4; Defs.' Mot., ECF No. 6; Pl.'s Opp'n, ECF No. 10; Defs.' Reply in Supp. of Mot. to Transfer and Dismiss ("Defs.' Reply"), ECF No. 11.

specialized and complex" that it required a degree of higher education, (2) "how one qualifies for the role of Management Analyst," and (3) how the fields of study listed as qualification for the position related to the job's duties and responsibilities. *Id*. ¶¶ 11–14. She filed this challenge in the United States District Court for the District of Columbia the same day.

USCIS Defendants have moved to transfer venue of this case to Ms. Laurel's home district, the Eastern District of New York, or, alternatively, to dismiss Ms. Laurel's claim for improper venue. *See* Mot. at 2–8. Defendants argue that this Court should exercise its discretion to transfer this case to the Eastern District of New York because the case could have been brought there initially and both private and public interests favor transfer. *Id*. Alternatively, Defendants argue that venue is improper in the District of Columbia because no party resides here and the events from which Ms. Laurel's claim arises did not occur here. *See id*. at 9–10. Ms. Laurel opposes both transfer and dismissal, arguing that venue is proper in this Court because two of the three Defendants reside in the District and the events from which her claim arises occurred in the District. *See* Pl.'s Opp'n.

## LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought[.]" 28 U.S.C. § 1404(a). A court must assess the appropriateness of transfer "according to an individualized, case-by-case consideration of convenience and fairness," *Stewart Org., Inc. v. Rioch Corp.*, 487 U.S. 22, 29 (1988), and not "simply because another forum, in the court's view, may be superior to that chosen by the plaintiff." *Sierra Club v. Van Antwerp*, 523 F. Supp. 2d 5, 11 (D.D.C. 2007) (internal quotation omitted).

The movant bears the burden of proving that transfer is proper. *W. Watershed Project v. Pool*, 942 F. Supp. 2d 93, 96 (D.D.C. 2013) (citing *S. Utah Wilderness All. v. Lewis*, 845 F. Supp. 2d 231, 234 (D.D.C. 2012)). As a threshold matter, the moving party must show that the plaintiff could have brought the suit in the transferee forum. *See* 28 U.S.C. § 1404(a). Once this is established, the moving party must show that the private and public interests, when balanced, favor transfer. *W. Watersheds*, 942 F. Supp. 2d at 96–97.

## DISCUSSION

**I.  This Case Could Have Been Filed in the Eastern District of New York**

Given that USCIS Defendants seek to transfer venue to the Eastern District of New York, the Court must first determine whether this case could have been filed in that district. *See* 28 U.S.C. § 1404(a). Where, as here, a plaintiff brings "a civil action in which a defendant is an officer or employee of the United States or any agency thereof," venue is proper in any district (1) where a defendant resides, (2) a substantial part of the events giving rise to the claim occurred, or (3) where the plaintiff resides, if no real property is involved in the action. *See* 28 U.S.C. § 1391(e); *see also Wolfram Alpha LLC v. Cucinelli*, 490 F. Supp. 3d 324, 330 (D.D.C. 2020). Because Ms. Laurel resides in Brooklyn, New York—within the territorial jurisdiction of the Eastern District of New York, *see* 28 U.S.C. § 112(c)—venue is proper there. Accordingly, Ms. Laurel could have brought this action in the transferee jurisdiction.

**II.  The Private and Public Interests Favor Transferring this Case**

Having proven that this matter *could* have been initiated in the Eastern District of New York, USCIS Defendants must now establish that litigation there would be both convenient and fair. *See W. Watersheds*, 942 F. Supp. 2d at 96–97. The Court has broad discretion to weigh private and public interests to make that determination. *Id.* at 96.

### A. *Private Interest Factors*

The private-interest factors include the parties' respective choices of forum, where events underlying the claim arose, the convenience of the parties and of witnesses, and the ease of access to sources of proof. *See Wolfram*, 490 F. Supp. 3d at 331 (citing *Aftab v. Gonzalez*, 597 F. Supp. 2d 76, 80 (D.D.C. 2009)).

    a.  <u>The Parties' Choice of Forum</u>

Ms. Laurel has chosen the District of Columbia as her preferred forum. *See generally* Compl. The deference ordinarily afforded to a plaintiff's chosen forum is significantly reduced "when it is not the plaintiff's home forum, has few factual ties to the case at hand, and defendants seek to transfer to plaintiff's home forum." *Bourdon v. Dep't of Homeland Sec.*, 235 F. Supp. 3d 298, 305 (D.D.C. 2017). Ms. Laurel resides in the Eastern District of New York. *See* Am. Compl. at 1. And given that the Vermont Service Center processed Ms. Laurel's visa application, this matter has little to no connection to the District of Columbia.

Ms. Laurel's assertion that high-ranking USCIS policy officials are located in this District does not change the analysis. The assertion is factually incorrect, as the USCIS Defendants have offices in Maryland, and the USCIS headquarters moved to Maryland in 2020, before Ms. Laurel filed her case. *See* Reply at 6–7; *Behena v. Renaud*, No. 21-291, 2021 WL 1820232, *2 (D.D.C. May 6, 2021) (describing USCIS's relocation of its headquarters to Maryland). And even if the relevant officials did reside in the District, "'mere involvement . . . on the part of federal agencies, or some federal officials who are located in Washington, D.C. is not determinative' of whether the plaintiffs' choice of forum receives deference." *New Hope Power Co. v. U.S. Army Corps of Eng'rs*, 724 F. Supp. 2d 90, 95 (D.D.C. 2010) (quoting *Stockbridge–Munsee Cmty. v. United States*, 593 F. Supp. 2d 44, 47 (D.D.C. 2009)).

Accordingly, notwithstanding Ms. Laurel's choice of forum, this factor slightly favors transfer to the Eastern District of New York.

      b. <u>Where the Events Underlying the Claim Arose</u>

Courts favor transfer to the location where the events underlying the claim arose. *See W. Watersheds*, 942 F. Supp. 2d at 99. The parties dispute whether those events occurred in the District of Columbia. *See* Defs.' Mot. at 3 (noting that processing and subsequent denial of Ms. Laurel's work status application occurred at USCIS's Vermont Service Center in St. Albans, Vermont); Pl.'s Opp'n at 9 (asserting that the complaint alleges specific actions taken by USCIS and Director Cuccinelli, who allegedly reside within the District of Columbia). "In actions challenging agency decisions under the APA, 'courts generally focus on where the decisionmaking process occurred to determine where the claims arose.'" *See Wolfram*, 490 F. Supp. 3d at 331–32 (quoting *Ngonga v. Sessions*, 318 F. Supp. 3d 270, 275 (D.D.C. 2018)). "However, 'the mere fact that a case concerns the application of a federal statute by a federal agency does not provide a sufficient nexus to the District of Columbia to weigh against transfer.'" *W. Watersheds*, 942 F. Supp. 2d at 98; *see also Shawnee Tribe v. U.S.*, 298 F.Supp.2d 21, 25 (D.DC. 2002) (recognizing that, while "some officials" involved in a decision "work in the Washington, D.C. area . . . the decisionmaking process, by and large, has not been substantially focused in this forum").

USCIS's Vermont Service Center—located in the District of Vermont—handled most, if not all, of Ms. Laurel's application. *See* Defs.' Mot. at 1 (citing Compl. ¶ 21). The Vermont Service Center issued a request for additional information, and Ms. Laurel, via her employer, sent responses to that office. *See* Compl. ¶¶ 9–10. The Vermont Service Center made the

decisions that Ms. Laurel challenges, including the ultimate decision to deny her visa petition. *See id.* ¶¶ 11, 21.

The high-level officials that Ms. Laurel has named as defendants do not establish a nexus to the District of Columbia. Even if Defendant Zuchowski—Director of USCIS's Vermont Service Center—were personally involved in the decision-making process, her actions would have occurred in Vermont—where she performs her official duties. *See* Compl. ¶ 21. And courts have refused to allow plaintiffs to "manufacture venue in the District of Columbia" by simply naming agency administrators such as the USCIS Director—responsible for regulation and oversight of the administrative process—as defendants. *Wolfram*, 490 F. Supp. 3d at 332 (quoting *Aftab*, 597 F. Supp. 2d at 81). In any event, there is no evidence that Director Cuccinelli took part in the adjudication of Ms. Laurel's application, and even if he had, his office is outside the District of Columbia. *See* Defs.' Mot. at 2; *Bahena*, 2021 WL 1820232, at *2. This factor thus weighs heavily in favor of transfer, as Ms. Laurel has no ties to the District of Columbia and has not shown that USCIS took any specific actions relating to her application within the District of Columbia.

        c. <u>Convenience of Parties, Witnesses & Access to Proof</u>

The remaining private-interest factors—the convenience of the parties and witnesses and access to proof—do not weigh in either party's favor. The Court agrees with USCIS Defendants that transfer to the Eastern District of New York would not inconvenience Ms. Laurel, as that is her home forum. *See* Defs.' Mot. at 6 (citing *Wolfram*, 490 F. Supp. 3d at 333). Ms. Laurel raises the possible inconvenience posed to Defendants USCIS and Director Cuccinelli if they are forced to litigate outside this District. *See* Pl.'s Opp'n at 6. But a defendant's location "is not a strong consideration when defendants move for transfer." *W. Watersheds*, 942 F. Supp. 2d at

100. Additionally, proof related to Ms. Laurel's claims appears no more easily accessible here than in the Eastern District of New York. Between this District and the proposed transferee district, then, these last factors are neutral. Combined with the other factors discussed above, on balance, the private-interest factors together weigh in favor of transfer.

### B. *Public Interest Factors*

The public-interest factors also support transfer. The Court must consider: "(1) the transferee court's familiarity with the applicable law; (2) the relative congestion of the calendars of the transferee and transferor courts; and (3) the local interest in deciding local controversies at home." *Wolfram,* 490 F. Supp. 3d at 334 (citing *Al-Ahmed v. Chertoff*, 564 F. Supp. 2d 16, 19 (D.D.C. 2008)).

  a. <u>Transferee Court's Familiarity with Applicable Law</u>

Neither party argues that this District has more familiarity with the applicable law than the Eastern District of New York. *See* Defs.' Mot. at 8–9; Pl.'s Opp'n at 6. This case involves federal claims based on federal laws and "[t]he transferee district is presumed to be equally familiar with the federal laws governing [the plaintiff's] claims." *Al-Ahmed*, 564 F. Supp. 2d at 20. Accordingly, this factor is neutral.

  b. <u>Relative Congestion of Court Calendars</u>

Similarly, neither party argues that the relative case load of either district moves the needle. *See* Defs.' Mot. at 9; Pl.'s Opp'n at 7. As such, it is unnecessary to dissect each court's docket to determine which is "more" congested. This is especially true because, as USCIS Defendants highlight, "[s]tatistics are not perfect indicators of court congestion as they may be influenced by additional factors" and "[d]epending on which metric a Court chooses to assess relative congestion, the weighing of this factor [often] points in different directions." Defs.'

8

Mot. at 9 (quoting *Wolfram*, 2020 WL 8254881, at *8).  At bottom, both courts are extremely busy.  As a result, this factor is neutral.

        c.  <u>Local Interest in Resolving Local Controversies</u>

        The local interest in resolving local controversies factor is "perhaps [the] most important," and it weighs heavily in favor of transfer here.  *Wolfram*, 490 F. Supp. 3d at 338.  "[C]ourts have a local interest in having localized controversies decided at home, including even controversies requiring judicial review of an administrative decision."  *McAfee LLC v. U.S.C.I.S.*, No. 19-2981, 2019 WL 6051559, at *1 (D.D.C. Nov. 15, 2019) (internal quotation omitted).  Courts consider "a wide variety" of factors to determine if an action is local in nature, including where the challenged decision was made; whether the decision directly affected the citizens of the transferee state; the location of the controversy; whether the issue involves federal constitutional issues or local or state law; whether the controversy has some national significance; and whether there was personal involvement by a District of Columbia official.  *Aftab*, 597 F. Supp. 2d at 84 (citing *Otay Mesa Prop. L.P. v. U.S. Dep't Interior* (584 F. Supp. 2d 122, 126 (D.D.C. 2008)).  Defendants argue that this case belongs in the Eastern District of New York, because a judicial resolution would directly affect a resident of New York.  *See* Defs.' Mot. at 8; Defs.' Reply at 6.  In response, Ms. Laurel repeats her mistaken contention that Defendants USCIS and Cuccinelli reside in the District.  *See* Pl.'s Opp'n at 7.

        The Eastern District of New York has a local interest in Ms. Laurel's claim.  *See Wolfram*, 490 F. Supp. 3d at 339 ("A locality has a great interest in protecting its citizens from the unreasonable actions of [a government agency].").  The effects of a judicial decision would be most felt in the Eastern District of New York as well, as resolution of this case will affect Ms. Laurel's work authorization.  *See Wolfram*, 490 F. Supp. 3d at 339 (describing "hiring" and

9

"obtaining proper immigration documentation for" an employee based in the transferee district as "a local issue"). Because nearly all the impacts of USCIS's decision and the outcome of this action will be felt most strongly in the Eastern District of New York, this factor weighs heavily in favor of transfer to the Eastern District of New York.

### C. Balancing of the Factors

As set forth above, the private and public interests collectively weigh in favor of transferring venue to the Eastern District of New York. Four of the private and public interest factors weigh in favor of transfer to varying degrees and the five remaining factors are neutral. *See Wolfram,* 490 F. Supp. 3d at 339–40 (holding transfer was appropriate where six of factors weighed in favor of and two factors weighed against transfer); *Gyau v. Sessions*, No. 18-0407, 2018 WL 4964502, at *2 (D.D.C. Oct. 15, 2018) (holding that transfer was appropriate where two private interest factors and one public interest factor weighed in favor of transfer, one private interest factor weighed slightly against transfer, and the remaining factors were neutral). Additionally, this Court has an established practice of transferring cases seeking to review or compel decisions on immigration applications to a plaintiff's home district. *See, e.g.*, *McAfee*, 2019 WL 6051559, at *2; *Gyau*, 2018 WL 4964502, at *1; *Ngonga*, 318 F. Supp. 3d at 274; *Pearson v. Rodriguez*, 174 F. Supp. 3d 210, 214 (D.D.C. 2016); *Chauhan v. Napolitano*, 746 F. Supp. 2d 99, 102 (D.D.C. 2010); *Mohammadi v. Scharfen*, 609 F. Supp. 2d 14, 16 (D.D.C. 2009); *Al-Ahmed v. Chertoff*, 564 F. Supp. 2d 16, 18 (D.D.C. 2008). Transfer of this action to the Eastern District of New York is therefore appropriate, and this Court will GRANT the motion to transfer. Having transferred this action to another district, this Court cannot opine on the merits of Defendants' motion to dismiss.

## CONCLUSION AND ORDER

For the reasons stated above, Defendants' Motion to Transfer and Dismiss (ECF No. 6) is **GRANTED IN PART**.  It is hereby:

**ORDERED** that this case is **TRANSFERRED** to the United States District Court for the Eastern District of New York.

Dated March 31, 2022.

ROBIN M. MERIWEATHER
UNITED STATES MAGISTRATE JUDGE
